UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYSSAMI DIAMOND, INC., <br><br>Plaintiff, <br><br>v. <br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, and DOES 1 through 10, inclusive, <br><br>Defendants. | Case No.: 3:20-cv-01230-AJB-RBB <br><br>**ORDER:** <br><br>**(1) GRANTING TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS, (Doc. No. 3); AND** <br><br>**(2) GRANTING INSURANCE COMPANY OF AMERICA'S MOTION TO STRIKE, (Doc. No. 4)** |

This action concerns claims of insurance coverage in the wake of the COVID-19 public health crisis, and government emergency orders relating thereto. Presently before the Court is Defendant Travelers Casualty Insurance Company of America's ("Travelers") (1) motion to dismiss Plaintiff Mayssami Diamond Inc.'s ("Plaintiff") Complaint; and (2) motion to strike claim for damages related to Plaintiff's unfair competition claims. (Doc. Nos. 3–4.) Plaintiff opposed both motions. (Doc. Nos. 13–14.) For the reasons stated herein, the Court **GRANTS** Travelers' motions **WITH LEAVE TO AMEND**.

//

//

## I. BACKGROUND

Plaintiff operates Mayssami Diamond Inc., a retail jewelry business located at 562 5th Avenue, San Diego, California (the "Premises"). (Complaint ("Compl."), Doc. No. 1-3, ¶¶ 1, 29.) According to the Complaint, Mayssami Diamond Inc. and Travelers entered into an insurance contract with a policy period of February 16, 2020 to February 16, 2021 to protect Plaintiff's business and employees from losses that could be caused by business interruption ("the Policy"). The Policy provided coverage for lost "Business Income," "Extra Expense," and "Extended Business Income" due to business interruption. (*Id.* ¶ 16.) The Policy also provided for coverage where access to Plaintiff's premises is prohibited by order of civil authority. (*Id.* ¶ 16.)

Plaintiff alleges that in March 2020, California Governor Gavin Newsom issued several executive orders (collectively the "Closure Orders") aimed at combating the spread of COVID-19, the "deadly infectious disease caused by the recently discovered Coronavirus known as SARS-CoV-2." (*Id.* ¶¶ 30, 34–37). On March 4, 2020, the Governor declared a State of Emergency in California due to the threat of COVID-19. (*Id.* ¶ 34.) Then on March 12, 2020, the Governor issued Executive Order N-25-20 directing residents "to heed any orders and guidance of state and local public health officials," (*id.* ¶ 36); and on March 19, 2020, the Governor issued Executive Order N-33-20 requiring California residents to follow the March 19, 2020 Order of the State Public Health Officer, and advising them that penalties would be imposed for non-compliance, (*id.* ¶ 37). The Complaint further alleges that Order N-33-20 forced Plaintiff to "close its store to on-premises retail business," (*id.* ¶ 40), and to cease all business, (*id.* ¶ 52).

As a result of the Closure Orders, Plaintiff was forced to close its business on March 19, 2020, and release workers from employment. (*Id.* ¶¶ 1, 14, 40.) In April 2020, Plaintiff filed a claim with Travelers requesting coverage in connection with its business losses as a result of the closure. (*Id.* ¶ 54.) Plaintiff claims on April 21, 2020, Travelers, without any investigation, denied coverage. (*Id.* ¶ 55.) As a result, Plaintiff argues it has suffered, and continues to suffer, extraordinary losses of business income and lost wages for their full-

time employees. (*Id.* ¶¶ 47–50.) According to Plaintiff, its losses amount to covered losses under the "Business Income," "Extra Expense," "Extended Business Income," and "Civil Authority" provisions of the Policy. (*Id.* ¶¶ 51–69.)

On May 26, 2020, Plaintiff commenced this action by filing a Complaint in San Diego Superior Court. (Doc. No. 1.) Plaintiff's complaint asserts nine causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) bad faith denial of insurance claim; (4) violation of California Business & Professions Code § 17200 et seq. ("UCL"); (5) fraudulent misrepresentation; (6) constructive fraud; (7) unjust enrichment; (8) declaratory relief; and (9) injunctive relief under the UCL. (*Id.*) On June 30, 2020, Travelers removed the action to this Court. (*Id.*) On July 7, 2020, Travelers filed its motion to dismiss, and motion to strike, (Doc. Nos. 3–4), which was opposed by Plaintiff. (Doc. Nos. 13, 14.) This order follows.

## II.   LEGAL STANDARDS

### 1.   Rule[1] 12(b)(6) Motion to Dismiss

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions

---

[1] All references to "Rule" is to the Federal Rules of Civil Procedure, unless otherwise stated.

of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## III. REQUEST FOR JUDICIAL NOTICE

Travelers requests the Court take judicial notice of (1) the Policy in dispute in this matter, and (2) two executive orders issued by Governor Gavin Newsom. (Doc. No. 3-1.) Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Upon review of the documents, the Court finds that its contents are either generally known or can be accurately and readily determined from credible sources. There is no dispute as to the Policy's authenticity, and the Policy is also incorporated by reference in the Complaint. And, the executive orders "are matters of undisputed public record" of which the Court can take judicial notice. *See Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 689 (9th Cir. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

## IV. DISCUSSION

### A. Travelers' Motion to Dismiss Plaintiff's Complaint

The Court will first address Travelers' motion to dismiss. Plaintiff claims it is entitled to coverage under the Policy's provisions for "Business Income," "Extra Expense," and "Extended Business Income" due to business interruption as a result of having to temporarily shutter its business. (Compl. ¶ 16.) Plaintiff also claims it may recover under the "Civil Authority" provision where access to Plaintiff's premises is prohibited by order of civil authority. (*Id.* ¶ 16.) The Court disagrees.

//

### 1. Insurance Contract Interpretation Legal Standards

Under California law, the "interpretation of an insurance policy is a question of law" to be answered by the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995). The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)). To do so, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). Generally, if the policy terms are clear and explicit, their ordinary and popular interpretation governs. *See Minkler*, 49 Cal. 4th at 321. But if the terms are ambiguous or susceptible to more than one reasonable interpretation, courts "interpret them to protect the objectively reasonable expectations of the insured." *Id.* However, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18–19.

There are two parts to any coverage analysis. First, "[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms." *Waller*, 11 Cal. 4th at 16 (internal brackets and quotation marks omitted). The insured bears the burden of proof in this regard, but the insuring agreement language in a policy is interpreted broadly in favor of coverage. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) ("[W]e generally interpret coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured."). If the insured proves that the claim falls within the policy terms, the burden then shifts to the insurer to prove that an exclusion applies. *See Waller*, 11 Cal. 4th at 16, 44; *see also Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1151 (9th Cir. 2019) ("The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.") (quoting *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003)). Exclusions "are

5

interpreted narrowly against the insurer." *Minkler*, 49 Cal. 4th at 322.

### 2. Civil Authority Provision

Plaintiff alleges that it has established coverage under the "Civil Authority" provision the Policy because the Closure Orders caused the business to shut down, resulting in the loss of business income. (Doc. No. 13 at 14.) In moving to dismiss, Travelers argues Plaintiff cannot establish entitlement to civil authority coverage because the Complaint fails to allege that the Closure Orders were "due to direct physical loss of or damage to property." (Doc. No. 3 at 20.) To trigger coverage under the civil authority provision for certain business income and extra expense losses, the Policy requires that the civil authority "prohibits access to the described premises" and "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss." (Policy, Doc. No. 3-1 at 84.) The parties agree that the Closure Orders issued by the Governor constitute acts of civil authority. However, upon review of the Complaint, the Court concludes that civil authority coverage does not apply for at least three reasons.

First, the Complaint does not specifically allege that any of the Closure Orders prohibited Plaintiff from accessing the business premises. Instead, the Complaint can only be read to allege that Plaintiff was prohibited from operating at the premises under the Closure Orders. Indeed, the Complaint only provides "[a]s a result of the March 19, 2020 Order, Mayssami Diamond ceased all business." (Compl. ¶ 52.) No facts in the Complaint demonstrate that Plaintiff was actually prohibited from accessing the premises. *See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) ("The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.").

Second, the Closure Orders were not were not issued "due to direct physical loss of or damage to property, other than at the described premises." Plaintiff argues that because

COVID-19 spread throughout the entire San Diego community, the Complaint adequately alleges that the Coronavirus was present at other properties. (Doc. No. 14 at 15.) Even assuming that damage or loss did occur to other properties as a result of the COVID-19 pandemic, Plaintiff fails to allege facts showing a plausible causal link between those other property losses and the Closure Orders. The text of the Closure Orders makes clear that they were issued as general precautionary measures "to control the spread of the virus," and "to preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all." (Doc. No. 3-1 at 183.) Nowhere is the presence of COVID-19 in the surrounding areas of Plaintiff's business cited as the impetus for the Closure Orders. Based on the justifications articulated on the face of the Closure Orders, the Court disagrees with Plaintiff that discovery is necessary to test the reasons driving the orders. (Doc. No. 13 at 17.)

Third, even if the Court were to find that the Closure Orders prohibited access and were issued due to physical loss of or damage to property other than at Plaintiff's premises, the "caused by or resulting from a Covered Cause of Loss" language is operative in precluding recovery by Plaintiff. Particularly, the Policy contains a broad exclusion of coverage for any "loss or damage caused by or resulting from any virus, bacterium, or other microorganisms that induces or is capable of inducing physical distress, illness or disease." ("Virus Exclusion") (Doc. No. 3-1 at 168.) Here, this exclusion applies, and takes any damage resulting from any virus out of the Policy's scope of coverage.

Plaintiff argues the Virus Exclusion is not applicable by its own terms, and at a minimum is ambiguous. (Doc. No. 13 at 18–21.) Plaintiff explains the Policy contains several parts, including the "Businessowners Property Coverage Special Form" (*id.* at 67–108), and "Commercial General Liability Coverage Form" (*id.* at 14–35). The provisions which Plaintiff seeks coverage under—"Business Income," "Extra Expense," "Extended Business Income," and "Civil Authority"—appear in the "Businessowners Property Coverage Special Form." (*See id.* at 70–71, 83.) By its terms, Plaintiff argues the Virus Exclusion does not apply because the endorsement only modified insurance under the

Commercial Property Coverage Part, Commercial Inland Marine Coverage Part, and Farm Coverage Part—and not the "Businessowners Property Coverage Special Form." However, as Travelers aptly explains, the Virus Exclusion "applies to all coverage under ***all forms and endorsements that comprise this Coverage Part or Policy***, including but not limited to forms or endorsements that cover . . . ***business income, extra expense, or action of civil authority***." (*Id.* at 168 (emphasis added).) The Policy's Common Conditions also makes clear that endorsements referencing the Commercial Property Coverage Part also "apply to the Businessowners Property Coverage Special Form in the same manner as they apply to the forms they reference." (*Id.* at 66.) Accordingly, the Court does not find an ambiguity, and the Virus Exclusion is operative. *See Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212–13 (1997) ("The Court will not strain to create an ambiguity where none exists or indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage where none was contemplated.").

As contemplated by the clear and unambiguous language of the Policy, a virus, such as the Coronavirus, is an excluded cause of loss. (*Id.* at 168.) As noted above, the Complaint describes COVID-19 as a "deadly infectious disease" that is "highly transmissible," has been "rapidly spreading throughout the world," and is caused by the "Coronavirus known as SARS-CoV-2." (Compl. ¶ 30). Thus, as alleged by Plaintiff, the Coronavirus is a virus "capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. Plaintiff's argument that its business losses were caused by the Closure Orders, and not the Coronavirus itself, does not compel a contrary conclusion. The Virus Exclusion precludes coverage for "loss or damage caused by or ***resulting from*** any virus, bacterium, or other microorganisms that induces or is capable of inducing physical distress, illness or disease." Plaintiff's Complaint makes clear that that the Closure Orders aimed at slowing the spread of the virus. *See BA LAX, LLC*, 2021 WL 144248, at *4 ("[P]ublic health measures intended to mitigate the spread of COVID-19 are directly or

indirectly caused by the activity of a virus"). [2]

* * *

In sum, Plaintiff fails to allege sufficient facts to show that they are entitled to Civil Authority coverage. This result is consistent with many courts routinely rejecting Civil Authority claims that fail to plausibly connect the Closure Order in question to loss or damage in the vicinity of the covered property. *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 844 (N.D. Cal. 2020) ("Because the [closure] orders were preventative—and absent allegations of damage to adjacent property—the complaint does not establish the requisite causal link between prior property damage and the government's closure order."); *Mortar & Pestle v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at *5 (Dec. 12, 2020).

### 3. Business Income, Extended Business Income or Extra Expense Coverage

Plaintiff alleges that it sustained financial losses that are covered under the Policy's "Business Income," "Extra Expense," and "Extended Business Income" coverages. To establish this, Plaintiff is required to allege that its operations were suspended by "direct physical loss of or damage to" property at Plaintiff's premises that was caused by a "Covered Cause of Loss," i.e., a risk of direct physical loss that is **not** excluded. (Doc. No. 3-1 at 71–72.) Plaintiff asserts that virtually every surface and object inside its store was infected by Coronavirus, "including the doors and door jambs, carpets, the display cases and surfaces, clerk and associate counters, chairs, light fixtures, the entire sales floor,

---

[2] Confronted with the same or similar virus exclusion provisions, numerous courts in California have determined that these provisions exclude coverage for business losses related to COVID-19. *See, e.g.*, *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020); *see also Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 7342687, at *2 (N.D. Cal. Dec. 14, 2020) (dismissing with prejudice after initially dismissing with leave to amend); *BA LAX, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248, at *4 (C.D. Cal. Jan. 12, 2021); *Colgan v. Sentinel Ins. Co., Ltd.*, Case No. 20-cv-04780-HSG, 2021 WL 472964, at *4 (N.D. Cal., Jan 26, 2021) (finding Sentinel's Virus Exclusion applies).

inventory room, bathroom, and artwork and photos." (Compl. ¶ 49). According to the Complaint, the presence of Coronavirus on Plaintiff's property constitutes "direct physical loss of or physical damage" to that property. (*Id.* ¶ 113). However, coverage under the Policy is not triggered even if a virus can somehow cause property damage because a virus "that induces or is capable of inducing physical distress, illness or disease" is not a Covered Cause of Loss. (Doc. No. 3-1 at 168.) As the Complaint alleges damage directly attributable to an excluded peril, it fails to plead a plausible entitlement to Business Income, Extra Expense, or Extended Business Income coverage.

### 4. Viability of Plaintiff's Claims

Based on the foregoing, Plaintiff's insurance claims are not covered by the Policy. And as Plaintiff's causes of action for breach of contract, breach of covenant of good faith and fair dealing, bad faith denial of insurance claim, unfair business practices, unjust enrichment, declaratory relief, and injunctive relief all rely upon the existence of coverage under the Policy, these claims will be dismissed. *See, e.g.*, *Waller*, 11 Cal. 4th at 36, 44 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.").

As to the fraudulent misrepresentation claim, Plaintiff alleges that "Defendant affirmatively misrepresented that there was full coverage for business interruption whenever there was a business interruption caused by physical damage." (Compl. ¶ 88.) The Court sees no misrepresentation here because the text of the Policy makes plain that it does cover physical damage to the property, but Plaintiff's particular claim simply did not meet it. Moreover, Plaintiff's allegations are insufficient to meet the heightened pleading standard for fraud claims. *See* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted).

As to the constructive fraud claim, Plaintiff alleges that "Defendant owes fiduciary and quasi-fiduciary duties to Plaintiff, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the Policy." (*Id.* at ¶ 96.) Other than a formulaic recitation of the elements, however, Plaintiff offered no additional allegations or factual enhancements to explain this claim. In any event, Travelers complied with the Policy as a matter of law. Thus, Plaintiff's constructive fraud claim also fails.

### B.     Travelers' Motion to Strike

Next, the Court addresses Travelers' motion to strike. (Doc. No. 4.) Federal Rule of Civil Procedure 12(f) states that a district court may "[u]pon motion made by a party before responding to a pleading . . . [strike] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

#### 1.     Plaintiff's Request to Recover Policy Benefits Under the UCL

First, Travelers argues that Plaintiff's request to recover policy benefits under its fourth claim for unfair competition must be stricken because this relief is barred as a matter of law. (Doc. No. 4 at 5.) "[A] person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to seek relief under the UCL. *See* Cal. Bus. & Prof. Code § 17204. "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *see Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (2006) ("[N]o one may recover damages under the UCL."). A UCL plaintiff is therefore "generally limited to injunctive relief and restitution." *Id.* (internal quotation marks omitted).

In opposition, Plaintiff argues that Travelers' motion to strike is procedurally improper. In *Whittlestone*, the Ninth Circuit "h[e]ld that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." 618 F.3d 974–75. The *Whittlestone* court held that by arguing damages should be stricken because they were precluded as a matter of law, the defendant's motion to strike "was really an attempt to have certain portions of [the] complaint dismissed or to

obtain summary judgment . . . as to those portions of the suit—actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Id.* at 974.

Consistent with *Whittlestone*, the Court construes Travelers' motion to strike as a motion to dismiss. *See Linares v. CitiMortgage, Inc.*, 2015 WL 2088705, at *8 (N.D. Cal. May 5, 2015) (relying on *Whittlestone* and construing Rule 12(f) motion to strike punitive damages under UCL as motion to dismiss); *Gourgue v. United States*, No. 12-cv-1490-LAB, 2013 WL 1797099 (S.D. Cal. Apr. 29, 2013) (converting a Rule 12(f) motion to strike a request for punitive damages and attorneys' fees into a Rule 12(b)(6) motion to dismiss and dismissing those requests for relief).

Therefore, to the extent Plaintiff seeks damages under its UCL claim, that claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2. Plaintiff's Request for Attorneys' Fees Under California Code of Civil Procedure § 1021.5

Travelers contends that the Court should strike Plaintiff's request for attorneys' fees and litigation costs under California Code of Civil Procedure § 1021.5. The California Code of Civil Procedure § 1021.5 permits an award of attorneys' fees to a prevailing party in an action under California state law when "the litigation enforced an important right affecting the public interest, . . . a significant benefit was conferred on a large class of persons, and . . . the necessity and financial burden are such that an award of attorney's fees is appropriate." *In re County of Monterey Initiative Matter*, 2007 WL 3342796, *3 (N.D. Cal. Nov. 9, 2007) (citing *Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir.1988)).

Plaintiff's Complaint is devoid of facts to support a representative claim on behalf of the general public or a large class. Plaintiff's allegations are specific to an insurance agreement between Plaintiff and Travelers. Plaintiff has no lawful basis to request attorneys' fees for its UCL claim, and no other statutory basis for attorneys' fees has been alleged. Thus, any requests for attorneys' fees under California Code of Civil Procedure § 1021.5 is **DISMISSED**.

//

12

3:20-cv-01230-AJB-RBB

## V. CONCLUSION

Based on the reasoning provided above, the Court **GRANTS** Travelers' motion to dismiss and motion to strike. (Doc. Nos. 3–4.) And "while the Court has doubt that Plaintiff can cure the fundamental deficiencies identified above," the Court **GRANTS LEAVE TO AMEND** given that the "law concerning business interruption coverage linked to the COVID-19 pandemic is very much in development." *Daneli Shoe Company v. Valley Forge Insurance Company*, No. 20-CV-1195 TWR (WVG), 2021 WL 1112710, at *5 (S.D. Cal. Mar. 17, 2021); *Mudpie, Inc.*, 2020 WL 5525171, at *8. Plaintiff will have until **April 20, 2021** from the date of this order to file an amended complaint. The Court will dismiss the case with prejudice if no amended complaint is filed.

**IT IS SO ORDERED.**

Dated: March 30, 2021

Hon. Anthony J. Battaglia
United States District Judge